IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| MELINDA RAE ROTHENBERGER, | : | CASE NO. 26-51669-SMS |
| *AKA MELINDA RAE ANDREWS* | : | |
| *AKA MINDY ROTHENBERGER* | : | JUDGE SAGE M. SIGLER |
| | : | |
| Debtor. | : | |
| | : | |
| U.S. BANK NATIONAL ASSOCIATION, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| v. | : | |
| MELINDA RAE ROTHENBERGER, | : | |
| *AKA MELINDA RAE ANDREWS* | : | |
| *AKA MINDY ROTHENBERGER* | : | |
| S. GREGORY HAYS, Trustee | : | |
| | : | |
| Respondents. | : | |
| | : | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that U.S. BANK NATIONAL ASSOCIATION has filed a Motion for Relief from the Automatic Stay and related papers with the Court seeking an order modifying the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at 10:00 a.m. on August 5, 2026 in Courtroom 1201, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated this:      06/30/2026

_____

*/s/ Ciro A Mestres*
_____

Ciro A Mestres, GA BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLP
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
Ciro.Mestres@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | **)** | CHAPTER 7 |
| | **)** | |
| MELINDA RAE ROTHENBERGER, | **)** | CASE NO. 26-51669-SMS |
| *AKA MELINDA RAE ANDREWS* | **)** | |
| *AKA MINDY ROTHENBERGER* | **)** | |
| | **)** | |
| Debtor. | **)** | |
| | **)** | |
| | **)** | |
| U.S. BANK NATIONAL ASSOCIATION, | **)** | CONTESTED MATTER |
| | **)** | |
| Movant. | **)** | |
| | **)** | |
| v. | **)** | |
| MELINDA RAE ROTHENBERGER, | **)** | |
| *AKA MELINDA RAE ANDREWS* | **)** | |
| *AKA MINDY ROTHENBERGER* | **)** | |
| S. GREGORY HAYS, Trustee | **)** | |
| | **)** | |
| Respondents. | **)** | |
| | **)** | |

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, U.S. Bank National Association, Movant and shows this Court the
following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the
automatic stay for all purposes allowed by law and the contract between the parties, including,
but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims
an interest.  A copy of the Deed to secure debt is attached hereto and made a part hereof.  Said
real property is security for a promissory note, and is commonly known as 1223 Old

Lathemtown Rd, Canton, GA 30115 (the "Property").

3.

Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly endorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

4.

Debtor is in default of the monthly installments pursuant to the terms of the Note.  As of June 23, 2026, Debtor is delinquent for one (1) payment of $2,480.32 (March 3, 2026), one (1) payment of $2,314.94 (April 3, 2026), one (1) payment of $2,645.63 (May 3, 2026) and one (1) payment of $2,480.27 (June 3, 2026), less a suspense balance of $0.00, for a total contractual delinquency of $9,921.16, pursuant to the terms of the Note.

5.

As of June 23, 2026, the unpaid principal balance is $348,864.57, and interest is due thereon in accordance with the Note.  The current amount of unpaid interest on Movant's loan as of June 23, 2026 is $13,145.53 and the total estimated payoff is $362,105.10.

6.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

7.

Because there may be little or no equity in the property which could benefit the Estate, the Trustee's interest should be deemed abandoned.

8.

Because the Deed to secure debt so provides, Movant is entitled to its attorney's fees.

9.

Debtor's Schedule A/B values the Property at $1,225,000.00.   Upon information and belief, Movant is not aware of any other liens against the Property other than two additional liens in the amounts of $857,648.06 and $67,439.00 held by Regions Bank and Reliable Renovations & Handyman pursuant to Debtor's Schedule D.

10.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Deed to secure debt and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(4); and (5) for such other and further relief as is just and equitable.

*/s/ Ciro A Mestres*

Ciro A Mestres, Georgia BAR NO. 840253
Attorney for Movant
McCalla Raymer Leibert Pierce, LLP
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-6516
312-803-9663
Ciro.Mestres@mccalla.com

BANKRUPTCY CASE NO. 26-51669-SMS

CHAPTER 7

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2026, I electronically filed the foregoing Motion for Relief from Stay and Notice of Hearing using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Jeffrey M. Heller, S. Gregory Hays

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid or overnight mail on the following parties at the address shown for each.

Melinda Rae Rothenberger
1223 Old Lathemtown Road
Canton, GA 30115

Dated: 06/30/2026

*/s/ Ciro A Mestres*_____
Ciro A Mestres
McCalla Raymer Leibert Pierce, LLP
1544 Old Alabama Road
Roswell, Georgia 30076

# U.S. Bank Home Equity Line of Credit Agreement

| **Lender** | **Borrower** | **Summary** |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION 425 WALNUT STREET CINCINNATI, OH 45202 | MELINDA ROTHENBERGER 1223 OLD LATHEMTOWN RD CANTON, GA 30115 | **Loan Number:** ▉▉▉▉ **Agreement Date:** February 25, 2022 **Credit Limit:** $350,000.00 **Maturity Date:** March 3, 2052 |

## Generally

**Definitions.** In this Agreement, these terms have the following meanings:

- **Pronouns.** The pronouns *"I"*, *"me"* and *"my"* refer to all Borrowers and Cosigners signing this Agreement, jointly and individually, and each other person or legal entity that agrees to pay this Agreement. *"You"* and *"your"* refer to the Lender, or any person or legal entity that acquires an interest in the Line of Credit.
- **Agreement.** *"Agreement"* refers to this U.S. Bank Home Equity Line of Credit Agreement, and any extensions, renewals, modifications or substitutions of it.
- **Billing Cycle.** *"Billing Cycle"* means the interval between the days or dates of regular periodic statements.
- **Credit Limit.** *"Credit Limit"* means the maximum amount of principal you will permit me to owe you under this Line of Credit, at any one time. My Credit Limit is stated at the top of this Agreement.
- **Line of Credit.** *"Line of Credit"* refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures, and this Agreement.
- **Loan Account Balance.** *"Loan Account Balance"* means the sum of the unpaid principal balance advanced under the terms of this Agreement, finance charges, fees and other charges that are due, and other amounts advanced to me or others under the terms of this Line of Credit.
- **Property.** *"Property"* means any real or personal property that secures my obligations under this Line of Credit.
- **Fixed Rate Option.** *"Fixed Rate Option"* is my right to elect to change the interest rate from a variable rate to a fixed rate for a designated balance.
- **Lock.** A *"Lock"* is an exercised Fixed Rate Option. It results in a fixed rate term loan for the balance converted.

Other important terms are defined throughout this Agreement.

**Promise to Pay.** I promise to pay to you or your order, at your address, or at such other location as you may designate, so much of the Credit Limit as may be advanced under this Agreement, plus finance charges, fees, charges, costs and expenses as described in this Line of Credit.

**Agreement Term.** This Agreement begins on the Agreement Date and continues until the Maturity Date. The *"Draw Period"* is the period during the term of this Agreement that I may request advances. I may not request advances during the Repayment Period. Periodic minimum payments are required during both the Draw Period and Repayment Period. The Draw Period is a/an 10-year period, and begins on the Agreement Date. The *"Repayment Period"* will then continue for 20 years.

## Advances

**Advance Methods.** I may request advances by the following methods:

- I write a/an check using one of the special checks you provide me for that purpose.
- I request a withdrawal by visiting a U.S. Bank branch, ATM, via online banking, or by any other method you approve.

• I make a purchase or withdrawal with my VISA® credit card supplied for purchases or cash loan advances.

You will make the advance by advancing the amount directly to me, depositing it in my transaction account, or by paying a designated third person or account. You will record the amount as an advance and increase my Loan Account Balance.

**U.S. Bank Overdraft Protection.** This section is part of the Agreement only if I have specifically requested and have obtained an Overdraft Protection Plan by linking this Line of Credit with a designated U.S. Bank personal checking account (*"Checking Account"*). An *"Overdraft Protection Advance"* is an advance of funds to my Checking Account from this Line of Credit that will help cover overdrafts on my Checking Account. Any Overdraft Protection Advance will post and be charged interest as an advance from this Line of Credit. Please refer to the U.S. Bank Deposit Account Agreement (entitled, "Your Deposit Account Agreement") for full Overdraft Protection Plan terms and the Consumer Pricing Information Brochure for fees that apply for Overdraft Protection Advances. You may cancel overdraft protection privileges under this Line of Credit, even if this Line of Credit remains open for other purposes.

**Advance Limitations.** You do not have to make any advances during any period in which I have a right to cancel. My ability to request and access advances is also subject to the following additional limitations:

**Minimum Advance.** Subject to the limitations contained in this Agreement, when I request an advance:

You will advance exactly the amount I request.

**Cash Advances.** Cash advances may be obtained with my VISA® card from an automated teller machine (ATM) that bears a U.S. Bank, PLUS® System, Interlink® or VISA® logo. ATM transactions for my card are limited to $1,000.00 per day. Cash advances are also limited by my Credit Limit. Each ATM has a minimum withdrawal amount. Cash advances from a teller must be at least $50.00. See the "Expanded Account Access" section about other cash advances. U.S. Bank may elect to change expanded account access at any time without notice.

**Transaction Limitations.** There are a few "indirect" limitations on the transactions I can make to this Line of Credit. These are not limitations on this Line of Credit, but limitations that are part of an access method. For example, if I attach this Line of Credit to my transaction account (overdraft protection) and if I have an ATM card or debit card that can access that transaction account, then the electronic funds transfer limitations that are part of my ATM or debit card are "indirect" limits on the number and dollar amount of my access to this Line of Credit per day by those methods. These are not really limits on the amount or number of advances I can get from this Line of Credit, but are limits inherent in ATM and debit card transactions.

**Credit Limit.** Subject to the terms and conditions of this Agreement, I may borrow on this Line of Credit up to the Credit Limit. I agree not to request or obtain an advance that will cause the unpaid principal of my Loan Account Balance to exceed the Credit Limit. I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan Account Balance to be greater than the Credit Limit, but that you may, at your option, grant such a request without obligating yourselves to do so in the future. My Credit Limit will not be increased if I overdraw the Line of Credit. If I exceed the Credit Limit, I agree to pay the amount by which the unpaid principal of my Loan Account Balance exceeds the Credit Limit immediately, even if you have not yet billed me. Any sums in excess of the Credit Limit will not be secured by the Property, unless they are for accrued but unpaid interest or expenditures made pursuant to the security instrument securing the Property.

**Expanded Account Access.** This is to advise me that, with U.S. Bank National Association and its affiliates:
• Any card or PIN issued to or selected by me under this Agreement will access multiple checking, savings, line of credit and credit card account(s) in my name at U.S. Bank or any of its affiliates; and
• My Line of Credit under this Agreement may be accessed by any card(s) or PIN(s) that I have selected or that has been issued to me or may in the future be selected by me or issued to me by U.S. Bank or any of its affiliates.

*"Access"* means use of a card or account number and PIN to conduct a transaction or obtain information at ATMs or via telephone, personal computer banking, or any other available method. There are no additional fees or charges for multiple account access. The fees and terms disclosed for each account apply. I understand that at U.S. Bank ATMs this multiple account access may be available for up to five checking, five savings, and five line of credit or credit card accounts. At other ATMs and with other methods of access, other limitations may apply. I can, if I wish, change this access and restrict the accounts that may be accessed by my card code or pin number.
• For customers at an ATM with a Debit or ATM card that have accessed a Home Equity Line of Credit through the expanded card access feature, cash withdrawals/advances and transferring from the Home Equity Line of Credit is not allowed.

**Stopping Payment on Checks.** If I would like to stop payment on any check written against the Line of Credit, I must contact you at 800.872.2657. Writing to you will take too much time and you will not have adequate time to act on my request before the check is paid. To process a stop payment request, I must provide: my account number, the check number, the dollar amount of the check, the date on which the check was written, and the name of the payee on the check. A valid stop payment order will remain in effect until I contact you to release it.

## Interest Charges

**Computation of Finance Charges.** Finance charges begin to accrue immediately when you make an advance to me. Finance charges will be computed as follows:

To figure the finance charge for each Billing Cycle, a daily periodic rate is multiplied by the Average Daily Balance of my Loan Account Balance. You then multiply that amount by the number of days in the Billing Cycle. To figure the Average Daily Balance, you first take my Loan Account Balance at the beginning of each day, and add any new advances, and subtract any payments or credits that apply to debt repayment, and any unpaid finance charges, fees, and charges. This gives you the daily balance. Then, you add up all the daily balances for the Billing Cycle and divide the total by the number of days in the Billing Cycle. This gives you the Average Daily Balance.

If the daily periodic rate varies during the Billing Cycle, the finance charge will be calculated by multiplying the applicable daily periodic rate by the Average Daily Balance determined only by reference to those days in which that rate was in effect (not the total number of days in the Billing Cycle), and then multiplying that amount by the number of days in which that rate was in effect. The sum of these products will be the total finance charge for the Billing Cycle.

**Periodic Rate and Annual Percentage Rate.** The periodic rate used in calculating the **FINANCE CHARGE** is 0.0055% and the corresponding **ANNUAL PERCENTAGE RATE** is 1.99%. The annual percentage rate includes interest and not other costs.

**Variable Rate.** The annual percentage rate may change. It will be based on the value of the Index described as the:

Base rate on corporate loans posted by at least 70% of the 10 largest U.S. banks known as the Wall Street Journal U.S. Prime Rate plus 1.9 percentage points.

> **Rate Changes.** The annual percentage rate may increase if the Index rate increases. An Index rate increase will result in a higher finance charge and it may have the effect of increasing my periodic Minimum Payment. A decrease in the Index rate will have the opposite effect as an increase. An Index rate increase or decrease will take effect the day the Index rate changes. The annual percentage rate can increase or decrease daily (after remaining fixed for 6 months). If the Index rate changes more frequently than the annual percentage rate, you will use the Index rate in effect on the day you adjust the annual percentage rate to determine the new annual percentage rate. In such a case, you will ignore any changes in the Index rate that occur between annual percentage rate adjustments.

> **Rate Change Limitations.** Annual percentage rate changes are subject to the following limitations. Initial discount or premium rates are not taken into consideration in applying interest rate limitations.

> > **Lifetime Floor.** The **ANNUAL PERCENTAGE RATE** will never be lower than:

> > 3.25%

> > **Lifetime Cap.** The **ANNUAL PERCENTAGE RATE** will never be higher than:

> > 18%

**Discounted Rate.** This Agreement's stated rates are the initial discounted rates assessed under this Agreement.

### Variable Rate Option

The initial discounted rates are not based on the relationship used for later rate adjustments. If these rates had been based on that relationship, the periodic rate used in calculating the **Finance Charge** would have been 0.01411% and the corresponding **Annual Percentage Rate** would have been 5.15%. The initial discounted rate will be in effect for 6 months from the Agreement Date. At the end of that period, the rates will be subject to further adjustments and limitations, and produce the effects described in the Variable Rate section of the Agreement.

## Fees and Charges

I agree to pay, or have paid, the fees and charges listed in the *Fees Appendix* that appears at the end of this Agreement.

## Payment Terms

**Payment Date.** During the term of this Agreement, a Minimum Payment will be due on or before the Payment Date indicated on my periodic statement for any Billing Cycle in which there is an outstanding balance on my account. My Minimum Payments will be due: monthly.

**Minimum Payment.** On or before each Payment Date, I agree to make a payment of at least the Minimum Payment amount. During the Draw Period, the Minimum Payment will equal the following:

The amount of accrued finance charges on the last day of the Billing Cycle.

During the Repayment Period, the Minimum Payment will equal the following:

The greater of the following:
1. $50.00.
2. The amount of accrued finance charges plus 0.41167% of the principal balance outstanding on the last day of the Draw Period.

    **Rounding.** The Minimum Payment will be rounded to the nearest $0.01.

    **Payment at Maturity.** On the Maturity Date I must pay the entire outstanding Loan Account Balance.

**Principal Reduction.**

    **Draw Period.** During the Draw Period, the Minimum Payment may not fully repay the principal balance outstanding on my Loan Account Balance.

**Additional Payment Terms.** If my Loan Account Balance on a Payment Date is less than the Minimum Payment amount, I must pay only the amount necessary to reduce my Loan Account Balance to zero or to any required Minimum Balance. If I otherwise fail to fully pay the Minimum Payment amount, you may, but are not required to, advance money to me to make the payment. All the terms of this Agreement will apply to such an advance. Subject to any required Minimum Balance, I can pay off all or part of what I owe at any time. I must continue to make my periodic Minimum Payment so long as I owe any amount. Unless otherwise agreed or required by applicable law, payments and other credits will be applied first to any finance charges that are due, then to escrow that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. No late charge will be assessed on any payment when the only delinquency is due to late fees assessed on earlier payments and the payment is otherwise a full payment.

## Security

You have secured my obligations under this Line of Credit by taking a security interest (by way of a separate security instrument dated February 25, 2022) in the following Property:

The dwelling and real property located at 1223 OLD LATHEMTOWN RD, CANTON, Georgia 30115.

Property securing any other loans that I have with you may also secure this Agreement.

## Insurance

**Property Insurance.** I will insure or retain insurance coverage on the Property and abide by the insurance requirements of any security instrument securing this Line of Credit. **I may obtain property insurance from anyone I want that is reasonably acceptable to you.**

**Flood Insurance.** Flood insurance is not required at this time. It may be required in the future should the Property be included in a updated flood plain map. If required in the future, I may obtain flood insurance from anyone I want that is reasonably acceptable to you.

## Fixed Rate Option

The Agreement includes a Fixed Rate Option that is subject to the following terms.

1. **Balance.** I may exercise the Fixed Rate Option against the following portion of the Loan Account Balance: the minimum amount is $2,000.00 and a maximum of the total available line amount less any previously locked principal balance.

2. **Fixed Rate Option Period.** I may exercise the Fixed Rate Option during the following period: at any time prior to the Draw Period end date.

3. **Fixed Rate Option Number.** The number of Locks that I may create (or have outstanding) are subject to the following restrictions: I may not have more than three Locks in effect at any one time.

4. **Fixed Rate Option Term.** The balance of a Lock will be paid over the following term: (A) in the case of repayments made on an interest-only basis (if this option is available), for a term that I select, with a minimum term of 1 year and a maximum term equal to the lesser of 5 years or the then-remaining term of the Draw Period; or (B) in the case of repayments made on a fully-amortizing basis, for a term that I select, with a minimum term of 1 year and a maximum term equal to the lesser of 20 years or the then-remaining term of both the Draw Period and the Repayment Period.

5. **Fixed Rate Option Repayment Method.** Payments on a Lock will be determined as follows: I may have two choices of payment for a Lock: (A) interest-only payment amounts where each Lock will have its own payment amount equal to the amount of the accrued finance charges outstanding on the last day of the Billing Cycle. This repayment method is not available to all borrowers and is instead available at your discretion. Under this payment method, the outstanding principal balance of the Lock will not be reduced and the entire principal balance will revert back to the variable portion of my Line of Credit at the end of the Lock term and remain subject to the terms and conditions listed in this Agreement; or (B) fixed payment amounts where each Lock will have its own payment amount determined by applying the appropriate interest rate to the outstanding principal balance of the Lock, and producing equal monthly payments of principal and interest for the entire Lock term.

6. **Fixed Rate Option Fees.** I will be required to pay the following fees at the time I exercise a Fixed Rate Option: $0.00

7. **Fixed Rate Determination.** The fixed rate applicable to a Lock will be determined as follows: If I choose to convert any portion of my balance to a fixed rate, the rate will be the published 10-year Treasury Security Rate that is in effect at the date of conversion plus a margin. Lower interest rates may be available. Call us to find out what our current rates are for Fixed Rate Options.

8. **Additional Fixed Rate Option Rules.** I may not make additional advances to the balance of a Lock once it is established, nor may I request advances from a Lock. If I exercise the Fixed Rate Option my Minimum Payment amount will equal the sum of the Lock payment amount plus the regular Minimum Payment amount for any remaining balance on my Line of Credit that has not been converted to a fixed rate. Additional payments to a Lock may be made at any time, but shall not affect my obligation to pay succeeding Lock payments as long as any amount is still owing on the Lock. In addition, the following rules apply to the Fixed Rate Option: Method. I can exercise a Fixed Rate Option by contacting you. A full disclosure of all terms will be provided to me at the time the Fixed Rate Option is exercised. Further, the unpaid principal balance of a Lock is part of my Credit Limit, and a principal portion of each payment amount made during the Draw Period will replenish my Credit Limit as of the date a payment is posted.

## Additional Terms

**Default.** I will be in default if any of the following occur.

**Payments.** I fail to make a payment as required by this Agreement.

**Property.** My action or inaction adversely affects the Property or your rights in the Property.

**Fraud.** I engage in fraud or material misrepresentation in connection with this Line of Credit.

**Executive Officer.** I am an executive officer of you and I become indebted to you or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

**Remedies.** After I default, and after you give any legally required notice and opportunity to cure, you may at your option do any of the following:

- You may terminate this Line of Credit and make all or any part of the amount owing by the terms of this Agreement immediately due.
- You may temporarily or permanently prohibit any additional advances.
- You may temporarily or permanently reduce the Credit Limit.
- You may demand additional security or additional parties to be obligated to pay this Agreement.

- You may make a claim for any and all insurance benefits or refunds that may be available on my default.
- You may make amounts advanced on my behalf immediately due, and you may add these amounts to the Loan Account Balance.
- You may use any and all remedies you have under applicable law or any agreement securing this Agreement.

Except as otherwise required by law, by choosing a remedy you do not give up your right to use another remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**Collection Expenses and Attorneys' Fees.** On or after default, to the extent permitted by law, I agree to pay the following:

All expenses of collection, enforcement or protection of your rights and remedies under this Agreement. Expenses include, but are not limited to, attorneys' fees, court costs, and other legal expenses. If the Loan Account Balance is collected by or through an attorney after maturity, I agree to pay 15 percent of the principal and interest owing as attorney fees. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. To the extent permitted by the *United States Bankruptcy Code*, I agree to pay the reasonable attorneys' fees you incur to collect the Loan Account Balance as awarded by any court exercising jurisdiction under the *Bankruptcy Code*. If this loan is secured by real estate, you may include interest on any bankruptcy claim you make.

**Suspension of Credit and Reduction of Credit Limit.** You may temporarily prohibit me from obtaining additional advances or reduce my Credit Limit during any period in which any of the following are in effect.

- The value of the Property securing this Line of Credit declines significantly below its appraised value for purposes of this Line of Credit;
- You reasonably believe that I will not be able to meet the repayment requirements under my Line of Credit due to a material change in my financial circumstances;
- I am in default of a material obligation under this Line of Credit. I understand, that you consider all of my obligations to be material. Categories of obligations that you consider material include, but are not limited to: my obligation to not commit fraud or misrepresentation in connection with this Line of Credit; my obligation to meet the repayment terms of this Line of Credit; my obligation to not adversely affect the Property or your rights in the Property; my obligation to pay fees and charges; my advance obligations; my obligation to fulfill the terms of the instrument securing this Agreement, and any other security instruments on the Property; my obligation to notify you; and my obligation to provide you with information;
- Government action prevents you from imposing the annual percentage rate provided for in this Agreement;
- The priority of your security interest is adversely affected by government action to the extent that the value of the security interest is less than 120 percent of my Credit Limit;
- The maximum annual percentage rate allowed under this Agreement is reached;
- You are notified by a regulatory agency that continued advances constitute an unsafe and unsound practice; or
- After a payment has been made, you reserve the right to withhold available advances in the amount of the principal portion of the payment up to 7 business days from the day you receive the payment. Any credit available before the payment is received will continue to be available for advances during this time.

In order to reinstate my credit privileges under the original terms of this Agreement, I must send you a written request to that effect. My credit privileges will only be reinstated if you determine that the condition which caused you to prohibit additional extensions and/or reduce the Credit Limit no longer exists. If appraisal or credit report fees are incurred in making this determination, you may (if allowed by applicable law) charge me such fees. If credit privileges were suspended at my request, they need not be reinstated unless all Borrowers request reinstatement.

**Set-Off.** You may set-off any amount due and payable under the terms of this Agreement against my right to receive money from you, unless prohibited by applicable law. For example, your right of set-off will not apply if I may obtain credit under this Agreement by using a credit card.

**Amendments.** Generally, the terms of this Agreement cannot be changed. You may, however, make the following changes:

- You may make changes that I agree to in writing at the time of the change.

- You may make changes that will unequivocally benefit me.
- You may make insignificant changes.
- You may change the Index and margin if the original Index becomes unavailable. Any new index will have an historical movement substantially similar to the original Index, and together with the new margin, produce an annual percentage rate substantially similar to the rate in effect at the time the original Index became unavailable.
- You may make changes that are described elsewhere in this Agreement.

**Termination.** I may terminate this Line of Credit at any time upon written notice to you. Termination by one Borrower terminates the Line of Credit for all Borrowers. Termination will not affect my obligation to repay advances made prior to the termination, nor will it alter my duties to perform under the terms of an instrument securing this Agreement until such instrument is released. Upon termination I will return to you any remaining access devices in my possession that were issued or used in connection with the Line of Credit.

**Waivers and Consent.** To the extent not prohibited by law and except for any required notice of right to cure for the failure to make a required payment, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor. To the extent not prohibited by law, I and any other party to this Line of Credit, also consent to the following actions that you may take, and waive defenses that may be available based on these actions, or based on the status of a party to this Line of Credit.

- You may renew or extend payments on this Agreement, regardless of the number of such renewals or extensions.
- You may release any Borrower or other person who may be liable for the indebtedness under this Agreement.
- You may release, substitute or impair any Property securing this Agreement.
- You may invoke your right of set-off.
- You may enter into any sales or repurchases of this Agreement to any person in any amounts and I waive notice of such sales or repurchases.
- I agree that any Borrower is authorized to modify the terms of this Agreement or any other Line of Credit document.
- You may inform any party who guarantees this Line of Credit of any loan accommodations, renewals, extensions, modifications, substitutions, or future advances.

No delay or forbearance on your part in exercising any of your rights or remedies will be construed as a waiver by you, unless such waiver is in writing and is signed by you.

**Cellular Phone Contact Policy.** By providing you with a telephone number for a cellular phone or other wireless device, including a number that I later convert to a cellular number, I am expressly consenting to receiving communications - including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system - from you and your affiliates and agents at that number. This express consent applies to each such telephone number that I provide to you now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from my cellular provider.

**Consumer Report Disputes.** If I believe you have inaccurately reported information on my credit history to a Consumer Reporting Agency (CRA), I may submit a dispute by calling 844.624.8230 or by writing to: U.S. Bank Attn: CBDH, P.O. Box 3447, Oshkosh, WI 54903-3447. In order for you to assist me with my dispute, I must provide: my name, address and phone number; the account number; the specific information I am disputing; the explanation of why it is incorrect; and any supporting documentation (e.g., affidavit of identity theft), if applicable.

**Tax Deductibility.** I should consult a tax advisor regarding the deductibility of interest and charges under this Line of Credit.

**Periodic Statements.** If I have an outstanding balance on my account or have any account activity, you will send me a periodic statement at the end of each Billing Cycle. This periodic statement will reflect, among other things, credit advances, finance charges, other charges, payments made, other credits, my previous account balance and my new account balance. The periodic statement will also identify my Minimum Payment for the cycle and the date it is due (*"Payment Date"*).

**Joint and Individual Liability and Successors.** My obligation to pay this Line of Credit is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on this Line of Credit, or any number of us together, to collect on this Line of Credit. Extending this Line of Credit or new obligations under this Line of Credit will not affect my duty under this Line of Credit and I will still be obligated to pay

this Line of Credit. The duties and benefits of this Line of Credit will bind and benefit the successors and assigns of you and me.

**Integration and Severability.** This Agreement is the complete and final expression of the agreement. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**Interpretation.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**Notice, Financial Reports, and Additional Documents.** Unless otherwise required or permitted by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address above, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Line of Credit and to confirm your lien status on any Property. Time is of the essence.

**Credit Information.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Line of Credit. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**Applicable Law.** I understand that you are a national banking association located in Ohio, and that all issues pertaining to interest and other related charges imposed under this Agreement will therefore be governed by the law of Ohio and applicable federal law. All other issues under this Agreement will be governed by the law of the state in which the Property is located.

**Limits on Liability for Visa® Check Cards, Visa®-Branded Cards, or Interlink® Cards.** Unless I have been negligent or have engaged in fraud, I will not be liable for any unauthorized transactions using my lost or stolen Visa® check card, Visa®-branded card, or Interlink® card. This limit on liability does not apply to commercial credit cards, ATM transactions outside of the United States, to ATM transactions not processed over Visa® or Plus networks, or to Personal Identification Number (PIN) transactions which are not processed by Visa®. Visa is a registered trademark of Visa International Service Association.

If I am liable for unauthorized transactions, my liability will not exceed $50. In addition, even in these circumstances I will not be liable for unauthorized transactions that occur after I notify of the loss, theft or possible unauthorized use by writing to the address listed on my bill, or by calling the phone number listed on my bill. I may also contact you on the Web: www.usbank.com

If my ATM or debit card is used for an unauthorized electronic fund transfer, my liability will be described in the disclosures I received with my card.

**Transferable Record Notice.** This Agreement is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Agreement may, on behalf of the maker of this Agreement, create a microfilm or optical disk or other electronic image of this Agreement that is an authoritative copy as defined in such law. The holder of this Agreement may store the authoritative copy of this Agreement in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

**Additional Terms.** I waive my right to the benefit of exemption as to my Property securing, or to secure, this Agreement.

## Signatures

By signing under seal, I agree to the terms of this Agreement and acknowledge receipt of a copy of this Agreement.

Signed, sealed and delivered:

**Borrower**



MELINDA ROTHENBERGER                    Date
                                        *Seal*

## Notices

### My Billing Rights: Keep this Document for Future Use

**This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.**

### Notify You In Case of Errors or Questions About My Bill

If I think my bill is wrong, or if I need more information about a transaction on my bill, I will write you at the address listed on my bill. I will write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I will give you the following information: (a) My name and account number, (b) The dollar amount of the suspected error, (c) Describe the error and explain, if I can, why I believe there is an error. If I need more information, I will describe the item I am not sure about.

If I have authorized you to pay my bill automatically from my savings, checking, share draft or other account, I can stop the payment on any amount I think is wrong. To stop the payment my letter must reach you three business days before the automatic payment is scheduled to occur.

### My Rights and Your Responsibilities After You Receive My Written Notice

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my Credit Limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. If you didn't make a mistake, I may have to pay finance charges, and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

### Special Rule for Credit Card Purchases

If I have a problem with the quality of property or services that I purchased with a credit card, and I have tried in good faith to correct the problem with the merchant, I may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (a) I must have made the purchase in my home state or, if not within my home state within 100 miles of my current mailing address; and (b) The purchase price must have been more than $50.

Credit Agreement-HE-Variable-Draw & Repay
© 2019 Wolters Kluwer Financial Services, Inc.
All rights reserved.

These limitations do not apply if you own or operate the merchant, or if you mailed me the advertisement for the property or services.

## Fees Appendix

I agree to pay the following additional fees:

- **Annual Fee:** A non-refundable annual fee of $0.00. This fee will be waived for the first year of my Line of Credit and will be assessed on the first anniversary of this Line of Credit and each year thereafter during the Draw Period. An annual fee will not be assessed during the Repayment Period.
- **Early Closure Fee:** 1.00% of the Credit Limit (with a maximum of $500.00) if I close this Line of Credit within 30 months of the Agreement Date.
- **Cash Advance Fee:** 2% of the amount of each cash advance obtained using a VISA® Gold Card issued on this Line of Credit, subject to a minimum fee of $1.50 and a maximum fee of $10.00 per advance.
- **Late Fee:** $29.00 if any payment is not made within 5 days after its Payment Date.
- **Stop Payment Fee:** $25.00 if I issue a stop payment order on any check written against the Line of Credit.
- **Returned Payment Fee:** $25.00 if I pay you with a check or an ACH payment that is returned to you unpaid.
- **Overline Fee:** $25.00 if I borrow an amount against the Line of Credit in excess of my Credit Limit. This fee will be assessed for each day during which you pay an advance and I remain over my Credit Limit at the end of that day.
- **Returned Advance Request Fee:** $25.00 if you return any check that would, if paid, cause me to exceed my Credit Limit.

**GENERAL FEES:**

Points $0.00

Origination Fee $0.00

Appraisal $0.00

Official Fees $0.00

Title Insurance $0.00

Title Search $0.00

Flood Zone Search $0.00

Broker Fee $0.00

Document Preparation Fee $0.00

Title Service Fee $0.00

DEED BOOK:14766 PG:1326 Filed: 03/04/2022 09:42 AM Clerk File Number:

Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: SubmitterID:

**Tax Parcel Identification Number:**

**Return To:** Radian Settlement
Services Inc.
1000 GSK Drive, Suite 210
Coraopolis, PA 15108

---

# Deed To Secure Debt

## With Future Advance Clause

---

The date of this Deed to Secure Debt (*"Security Instrument"*) is February 25, 2022.

**Grantor**

MELINDA RAE ROTHENBERGER AND
JOSEPH B ROTHENBERGER, MARRIED TO
EACH OTHER
1223 OLD LATHEMTOWN RD
CANTON, GA 30115

**Lender**

U.S. BANK NATIONAL ASSOCIATION

Organized and existing under the laws of the United States of America
425 WALNUT STREET
CINCINNATI, OH 45202

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, with power of sale, the following described property:

ALL THAT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 1243, 3RD DISTRICT, 2ND SECTION, CHEROKEE COUNTY, GEORGIA RECORDS, BEING DESCRIBED AS TRACT 5 AS RECORDED IN PLAT BOOK 118, PAGE 1179, CHEROKEE COUNTY, GEORGIA RECORDS, WHICH RECORDED PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION.

The property is located in CHEROKEE County at 1223 OLD LATHEMTOWN RD, CANTON, Georgia 30115.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $350,000.00. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

---

DEED BOOK:14766 PG:1327    Filed: 03/04/2022 09:42 AM    Clerk File Number:
Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs:        SubmitterID:

Case 26-51609-sms    Doc 41    Filed 06/30/26    Entered 06/30/26 10:42:19    Desc Main
Document    Page 18 of 24

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

(A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

The credit agreement signed by MELINDA ROTHENBERGER (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). Under the Note, the Lender agrees, subject to certain terms, conditions and limitations, to make advances to the Borrower in a principal amount outstanding not to exceed Three hundred fifty thousand and 00/100 Dollars (U.S. $350,000.00). Borrower has promised to pay this debt with interest in regular periodic payments and to pay the debt in full not later than March 3, 2052.

(B) All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C) All other obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

(D) All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in Grantor's principal dwelling that is created by this Security Instrument.

Release of any part of the Secured Debt or of any part of the Property will not affect the borrower's personal liability under any instrument secured by this Security Instrument or this Security Instrument's priority.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Deed to Secure Debt Covenants.** Grantor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Grantor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Grantor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, deed to secure debt, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees to make all payments when due and to perform or comply with all covenants. Grantor agrees to promptly deliver any notices that Grantor receives from holder. Grantor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow

Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs:          SubmitterID:

any waste, impairment, or deterioration of the Property. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**Authority to Perform.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Assignment of Leases and Rents.** Grantor irrevocably grants, bargains, transfers, conveys and sells to Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as *"Leases"*) and rents, issues and profits (all referred to as *"Rents"*). In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument. Grantor agrees that this assignment is effective as to third parties on the recording of this Security Instrument. Upon default, Lender may enforce this assignment by notice and demand to Grantor's tenants that all future Rents be paid directly to Lender, by commencement of an action or proceeding for appointment of a receiver or for sequestration of rents, or as the law otherwise provides. Upon default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

**Leaseholds; Condominiums; Planned Unit Developments.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, deed to secure debt, security agreement or other lien document.

**Insurance.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument. Grantor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on purchase of this insurance.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the

DEED BOOK:14766 PG:1329 Filed: 03/04/2022 09:42 AM Clerk File Number:

Rec:$25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest:$0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: SubmitterID:

Case 26-51609-sms Doc 41 Filed 06/30/26 Entered 06/30/26 10:42:19 Desc Main
Document Page 20 of 24

policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

**5. Warranty of Title.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain, transfer, convey and sell the Property to Lender, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Due on Sale.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**7. Warranties and Representations.** Grantor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Grantor or to which Grantor is a party.

**8. Default.** Grantor will be in default if any of the following occur:

**Fraud.** Any Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by Borrower or Grantor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Grantor fails to maintain required insurance on the Property; (b) Grantor transfers the Property; (c) Grantor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction by the Borrower adversely affects Lender's security; (d) Grantor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Grantor dies; (f) if more than one Grantor, any Grantor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Grantor and subjects Grantor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

**9. Remedies on Default.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property. Grantor appoints Lender as Grantor's agent and attorney-in-fact to exercise the power of sale and make such conveyance. Grantor covenants and agrees that a conveyance, including all recitals therein, made under the power of sale shall be binding and conclusive upon Grantor. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise, and are cumulative to the remedies for collection of the Secured Debt.

DEED BOOK:14766 PG:1330 Filed: 03/04/2022 09:42 AM Clerk File Number:

Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs:                    SubmitterID:

Case 26-51609-sms   Doc 41   Filed 06/30/26   Entered 06/30/26 10:42:19   Desc Main
Document    Page 21 of 24

If there is a default, Lender may advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Lender designates. Lender or its designee may purchase the Property at any sale. Lender shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Lender shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Grantor, or any person holding possession of the Property through Grantor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

**10. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** If Grantor breaches any covenant in this Security Instrument, Grantor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. Where the Secured Debt is collected by or through an attorney after maturity, Grantor agrees to pay 15 percent of the principal and interest owing as attorneys' fees. To the extent permitted by the *United States Bankruptcy Code*, Grantor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

☐ If this is a loan made under *O.C.G.A.* 7-6A-5 et seq., Grantor will not be liable for attorneys' fees relating to Grantor's default that are incurred by Lender prior to the 30-day period to cure Grantor's default. Nor will Grantor be liable for any such fees in excess of $100.00 that are incurred by Lender after the expiration of the 30-day period, but prior to the time Lender files a foreclosure action or takes any action seize or transfer ownership of Grantor's home. After Lender files a foreclosure action or takes other action to seize or transfer ownership, Grantor will be liable for attorneys' fees that are reasonable and actually incurred by Lender, and Grantor agrees to pay up to 15 percent of the principal and interest owing under this Agreement as attorneys' fees. In addition, after Lender files a foreclosure action or takes other action to seize or transfer ownership, Grantor will be liable for any other reasonable and necessary expenses incurred by Lender.

**11. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:
(A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

DEED BOOK:14766 PG:1331    Filed: 03/04/2022 09:42 AM   Clerk File Number:
Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs:          SubmitterID:

(B) Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

(C) Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

(D) Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**12. Escrow for Taxes and Insurance.** Grantor will pay to Lender amounts for (a) yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument, (b) yearly leasehold payments or ground rents (if any), (c) yearly premiums for hazard or property insurance, (d) yearly premiums for flood insurance (if any), and (e) yearly premiums for mortgage insurance (if any). Grantor will pay those amounts to Lender unless Lender tells Grantor, in writing, that Grantor does not have to do so, or unless the law requires otherwise. Grantor will make those payments at the times required by Lender.

Lender will estimate from time to time Grantor's yearly taxes, assessments, leasehold payments or ground rents and insurance premiums, which will be called the *"Escrow Items"*. Lender will use existing assessments and bills and reasonable estimates of future assessments and bills. The amounts that Grantor pays to Lender for Escrow Items under this section will be called the *"Funds"*. Lender will collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federally related mortgage loan may require for Grantor's escrow account under the federal *Real Estate Settlement Procedures Act of 1974* (as amended), unless another law that applies to the Funds sets a lesser amount. If so, Lender will collect and hold Funds in the lesser amount.

Lender will keep the Funds in a savings or banking institution which has its deposits or accounts insured or guaranteed by a federal or state agency. If Lender is such an institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give Grantor, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge Grantor for holding or keeping the Funds, for using the Funds to pay Escrow Items, for analyzing Grantor's payments of Funds, or for receiving, verifying and totaling assessments and bills. However, Lender may charge Grantor for these services if Lender pays Grantor interest on the Funds and if the law permits Lender to make such a charge. Lender may require Grantor to pay a one-time charge for an independent real estate tax reporting service used by Lender in accordance with the Secured Debts, unless applicable law provides otherwise. Lender will not be required to pay Grantor any interest or earnings on the Funds unless either (i) Lender and Grantor agree in writing, at the time Grantor signed this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender will account to borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify borrower in writing, and, in such case, borrower will pay to Lender the amount necessary to make up the shortage or deficiency. Borrower shall make up the shortage or deficiency as Lender directs, subject to the requirements of applicable law.

If, by reason of any default under this Security Instrument, Lender declares all Secured Debts due and payable, Lender may then apply any Funds against the Secured Debts.

When Grantor has paid all of the sums secured, Lender will promptly refund to Grantor any Funds that are then being held by Lender.

**13. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to convey Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**14. Severability; Interpretation.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with

DEED BOOK:14766 PG:1332   Filed: 03/04/2022 09:42 AM   Clerk File Number:
Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs:          SubmitterID:

Case 26-51669-sms   Doc 41   Filed 06/30/26   Entered 06/30/26 10:42:19   Desc Main
Document   Page 23 of 24

applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**15. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**16. Waivers.** Except to the extent prohibited by law, Grantor waives all homestead and other exemption rights provided for by the constitution and laws of Georgia relating to the Property.

**17. Line of Credit.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

**18. Applicable Law.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.

**19. Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents ☐ Other: _____

**20. ☐ Affirmative Statement.** Grantor and Lender agree, by this affirmative statement pursuant to *O.C.G.A.* 44-14-80, to establish a perpetual or indefinite security interest in the Property conveyed to secure the Secured Debts.

**21. Security Deed.** This Security Instrument is a deed passing legal title pursuant to the laws of the State of Georgia governing conveyances of property to secure debt and is not a mortgage.

**22. ☐ Additional Terms.** _____

### Signatures

By signing under seal below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument. IN WITNESS WHEREOF, Grantor has signed and sealed this Security Instrument.

Signed, sealed and delivered:

**Grantor**

_____
**MELINDA RAE ROTHENBERGER**          **Date**
                                      *Seal*

DEED BOOK:14766 PG:1333 Filed: 03/04/2022 09:42 AM Clerk File Number:
Rec: $25.00 Intangible Tax: $1,050.00 Penalty: $0.00 Interest: $0.00
Patty Baker, Clerk of Superior Court - Cherokee County, GA
ParticipantIDs: SubmitterID:

Case 26-51669-sms Doc 41 Filed 06/30/26 Entered 06/30/26 10:42:19 Desc Main
Document Page 24 of 24

Signed, sealed and delivered in the presence of:

_(Unofficial Witness)_

Anita Jordan
_(Print Name)_

_Notary Public_

Michael J. Ragozzine
_(Print Name)_

State of Georgia

County of ~~CHEROKEE~~ Cobb

My commission expires: 11/06/23

JOSEPH B ROTHENBERGER          2/25/22
                               Date
                               Seal

Signed, sealed and delivered in the presence of:

_(Unofficial Witness)_

Anita Jordan
_(Print Name)_

_Notary Public_

Michael J. Ragozzine
_(Print Name)_

State of Georgia

County of ~~CHEROKEE~~ Cobb

My commission expires: 11/06/23