UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MELINDA RAE ROTHENBERGER, | ) | CASE NO. 26-51669-sms |
| | ) | |
| Debtor | ) | |
| ______________________________ | ) | |
| | ) | |
| S. GREGORY HAYS. Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff | ) | ADVERSARY PROCEEDING |
| | ) | NO. ____________________ |
| v. | ) | |
| | ) | |
| MELINDA RAE ROTHENBERGER, and | ) | |
| JOSEPH BRAND ROTHENBERGER, | ) | |
| | ) | |
| Defendants | ) | |
| ______________________________ | ) | |

**COMPLAINT FOR (1) TURNOVER OF PROPERTY OF THE ESTATE, AND (2) ALTERNATIVELY, AVOIDANCE AND RECOVERY OF TRANSFER**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate of Melinda Rae Rothenberger, by and through undersigned counsel, and files this *Complaint for Turnover of Property of the Estate, and (2) Alternatively, Avoidance and Recovery of Transfer* (the "Complaint"), respectfully showing as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O), and Trustee consents to entry of final orders or judgments by this Court.

3. Defendant Melinda Rae Rothenberger ("Debtor") is subject to the jurisdiction of this Court and may be served at his residence at 1223 Old Lathemtown Road, Canton, GA 30115.

4. Defendant Joseph Brand Rothenberger ("Spouse") is subject to the jurisdiction of this Court and may be served at his residence at 1223 Old Lathemtown Road, Canton, GA 30115.

5. Venue is proper in this Court under 28 U.S.C. §1409 because this adversary proceeding arises in and relates to the Chapter 7 bankruptcy case of Melinda Rae Rothenberger pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case No. 26-51669-sms.

**Appointment of Trustee**

6. On February 6, 2026 (the "Petition Date"), Debtor filed her voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, modified, or supplemented, the "Bankruptcy Code").

7. Trustee was appointed as the interim Chapter 7 trustee in this case.

8. The meeting of creditors was concluded on March 10, 2026 (the "Meeting of Creditors"). Trustee is the duly appointed trustee in this case pursuant to 11 U.S.C. § 702(d).

9. At the commencement of the Bankruptcy Case, the bankruptcy estate of Debtor was created under 11 U.S.C. § 541(a) (together, the "Bankruptcy Estate") that includes all Debtor's legal or equitable interests in property as of the commencement of the Bankruptcy Case and any interest in property that the estate acquired after commencement of the Bankruptcy Case. 11 U.S.C. § 541(a)(1) and (7). Trustee is the sole representative of the Bankruptcy Estate. 11 U.S.C. § 323(a).

10. On February 9, 2026, Debtor filed her *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (the "SOFA") and *Schedule A/B: Property* ("Schedule A/B") in accordance with Fed. R. Bankr. P. 1007 (Bankr. Doc. No. 8).

**Background**

11. Prior to the Petition Date, Debtor and Spouse (collectively, "Defendants") maintained a joint bank account at JPMorgan Chase Bank, account ending in 1607 (the Chase Account").

12. Under Georgia law, a joint account belongs, during the life of the parties, to the parties in proportion to the net contributions by each to the sums on deposit. O. C. G. A. § 7-1-812.

**The 2024 Tax Refunds**

13. Prior to the Meeting of Creditors, for the taxable year ending December 31, 2024, Debtor and Spouse filed (i) with the Department of Treasury-Internal Revenue Service (the "IRS") a 1040 U.S. Individual Income Tax return, and (ii) with the Georgia Department of Revenue (the "GDR"), a Georgia Form 500 Individual Income Tax return (the "2024 Returns").

14. Debtor provided Trustee a copy of the 2024 Returns prior to the Meeting of Creditors.

15. The 2024 Returns showed a refund due (i) from the IRS in the amount of $52,916, and (ii) from the GDR in the amount of $6,012.

16. In response to Question 28 on Schedule A/B, Debtor denied that any tax refund was due and owing to Debtor. (Bankr. Doc. No. 8, Page 12 of 49).

17. At the Meeting of Creditors, Trustee asked Debtor if Debtor was planning on receiving any refund from the IRS. Debtor testified "I am not sure. [unintelligible] There is

currently holding because I have to do the Southpoint tax return, which I am not able to do until we get data-based software from the previous owner…. I filed personal but have not filed the business return yet."

18. On March 11, 2026, which was the day after the Meeting of Creditors, a refund from the IRS in the amount of $52,916.00 (the "IRS Refund") was deposited into the Chase Account.

19. On March 12, 2026, a refund from the GDR in the amount of $5,141.96 (the "GDR Refund") was deposited into the Chase Account.

20. Debtor's portion of the IRS Refund and GDR Refund (collectively, the "2024 Refunds") is based on Debtor's contributions to the overpayment that generated the 2024 Refunds.

21. Debtor's portion of the 2024 Refunds is property of the Bankruptcy Estate.

22. Debtor's portion of any refund from the IRS and GDR for the taxable year ending December 31, 2025, is property of the Bankruptcy Estate (the "Potential 2025 Refunds").

**The Allegedly Frozen Funds**

23. On October 30, 2025, Pinnacle Business Funding, LLC ("Pinnacle") obtained a Judgment against Southpoint Financial Services, Inc. and Debtor in the Supreme Court of the State of New York, County of Kings, Index Number 531946/2025 (the "Judgment").

24. In response to an Information Subpoena and Restraining Notice from Pinnacle, on November 3, 2025, Chase informed Pinnacle that the balance in account ending in 1607 jointly held by Debtor and her husband, Joseph Rothenberger (the "Account"), was $68,788.68.

25. On November 13, 2025, Pinnacle filed a Petition against Chase in the Supreme Court of the State of New York, County of Nassau, Index Number 624649/2025 (the "Petition"), seeking to compel Chase to pay to Pinnacle the funds in the Account.

26. On November 24, 2025, the Petition was served on Chase.

27. In response to Question 10 of Debtor's SOFA (Bankr. Doc. No. 8, Page 3 of 49), Debtor identified a levy by Pinnacle. Debtor's explanation was "Levied personal checking account. The account was frozen. Tried to work out a paymentment [sic] plan but creditor declined." The date was identified as 11/3/2025. The value of the Property was identified as $291,993.97. Debtor checked the box that the "Property was attached, seized or levied.

28. At the Meeting of Creditors, Trustee asked about Pinnacle. Trustee specifically asked whether Pinnacle garnished her account on November 3 and received $291,000. Debtor testified that yes, Pinnacle "put lien on account" at the time, but there wasn't that much money. Debtor identified $65,000. Trustee asked: "so how much did they wind up taking - $65,000?" Debtor testified that they "put a freeze on for all of it."

29. Later in the Meeting of Creditors, Trustee referred to the Chase Account and, in particular, the withdrawal of $65,000.00 on December 10, 2025. Debtor responded that they "freeze the account" and testified that when they freeze the account, they "have to freeze it for 30 days" and petition "the bank to release the funds." Trustee asked: "so they didn't get that money until 12/10?" Debtor testified: "correct, they didn't file something correct. They should have been able to get it, like, 12/4 but they had to refile something."

30. On December 10, 2025, Spouse withdrew the $65,000.00 (the "Withdrawn Funds") from the Chase Account.

31. On information and belief, most of the Withdrawn Funds represented amounts contributed by Debtor to the Chase Account. As such, the portion of the Withdrawn Funds attributable to Debtor's contributions to the Chase Account are property of the Bankruptcy Estate.

**Count I**
**(Turnover of Tax Refunds)**

32. Trustee re-alleges and incorporates the allegations of paragraphs 1 through 31 above as though fully set forth herein.

33. Debtor's portion of the IRS Refund and GDR Refund (collectively, the "2024 Refunds") is based on Debtor's contributions to the overpayment that generated the 2024 Refunds.

34. Debtor's portion of the 2024 Refunds is property of the Bankruptcy Estate.

35. Debtor's portion of any refund from the IRS and GDR for the taxable year ending December 31, 2025, is property of the Bankruptcy Estate (the "Potential 2025 Refunds").

36. Pursuant to 11 U.S.C. 542(a), "an entity, other than a custodian in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that debtor may exempt, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

37. Debtor's portion of the 2024 Refunds and Potential 2025 Refunds are property of the Bankruptcy Estate that Trustee may use, sell, or lease under 11 U.S.C. § 363.

38. Defendants are not custodians as defined by 11 U.S.C. § 101(11).

39. Debtor's portion of the 2024 Refunds are not of inconsequential value or benefit to the Bankruptcy Estate.

40. Accordingly, Defendants must deliver Debtor's portion of the 2024 Refunds to Trustee or account for the 2024 Refunds or their value.

41. Debtor's portion of the Potential 2025 Refunds are not of inconsequential value or benefit to the Bankruptcy Estate.

42. Accordingly, if Defendants have received the Potential 2025 Refunds, Defendants must deliver Debtor's portion of the Potential 2025 Refunds to Trustee or account for the Potential 2025 Refund or their value.

**Count II**
**(Turnover of Withdrawn Funds)**

43. Trustee re-alleges and incorporates the allegations of paragraphs 1 through 42 above as though fully set forth herein.

44. Upon information and belief, the majority of the Withdrawn Funds were contributions made to the Chase Account by Debtor.

45. Debtor's portion of the Withdrawn Funds (hereinafter, "Debtor's Portion") are property of the Bankruptcy Estate that Trustee may use, sell, or lease under 11 U.S.C. § 363.

46. Spouse is not a custodian as defined by 11 U.S.C. § 101(11).

47. Debtor's Portion of the Withdrawn Funds are not of inconsequential value or benefit to the Bankruptcy Estate.

48. Accordingly, Spouse must deliver Debtor's Portion of the Withdrawn Funds to Trustee or account for Debtor's Portion of the Withdrawn Funds or their value.

**Count III**
**(Alternative Relief, Avoidance and Recovery of Transfer)**

49. Trustee re-alleges and incorporates the allegations of paragraphs 1 through 48 above as though fully set forth herein.

50. Debtor's Portion of the Withdrawn Funds is property of Debtor.

51. Spouse's withdrawal of Debtor's Portion of the Withdrawn Funds is a transfer as defined in 11 U.S.C. § 101(54)(d) (hereinafter, the "Transfer").

52. The Transfer occurred on December 10, 2025, which is within two (2) years of the Petition Date.

53. The Transfer was made with the intent to hinder and delay creditors, including Pinnacle.

54. Debtor was insolvent at the time of the Transfer.

55. Spouse paid no consideration for the Transfer. Therefore, Debtor received less than reasonably equivalent value for the Transfer.

56. Trustee may avoid the Transfer pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (a)(1)(B).

57. Spouse was the initial transferee of the Transfer.

58. Pursuant to 11 U.S.C. § 550(a), Trustee may recover Debtor's Portion of the Withdrawn Funds or its value from Spouse.

59. 11 U.S.C. § 551 provides that any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the bankruptcy estate.

60. Trustee is entitled to avoid the Transfer under 11 U.S.C. § 548(a), and the Transfer so avoided is preserved for the benefit of the bankruptcy estate pursuant to 11 U.S.C. § 551.

WHEREFORE, Trustee requests that this Court enter an order and judgment in favor of Trustee granting the following relief:

(i) Ordering Defendants to deliver to Trustee the 2024 Refunds and the Potential 2025 Refunds or account for the 2024 Refunds and Potential 2025 Refunds or their value;

(ii) Ordering Spouse to deliver to Trustee Debtor's Portion of the Withdrawn Funds or account for Debtor's Portion of the Withdrawn Funds or their value;

(iii) Alternatively, avoiding the Transfer of Debtor's Portion of the Withdrawn Funds pursuant to 11 U.S.C. §§ 548(a)(1)(A) and/or (a)(1)(B),

(iv) ordering the recovery of Debtor's Portion of the Withdrawn Funds or their value from Spouse as initial transferee, and

(v) ordering that the avoided Transfer is preserved for the benefit of the Bankruptcy Estate pursuant to 11 U.S.C. § 551; and

(vi) Granting such other and further relief as this Court deems just and equitable, including casting all costs against Defendant.

Dated: July 17, 2026

LAMBERTH, CIFELLI,
ELLIS & NASON, P.A.
*Attorneys for Trustee*

By: *<u>/s/ G. Frank Nason, IV</u>*
G. Frank Nason, IV
Georgia Bar No. 535160
fnason@lcenlaw.com

6000 Lake Forrest Drive, NW
Suite 290
Atlanta, Georgia 30328
(404) 262-7373