**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MELINDA RAE ROTHENBERGER, | ) | CASE NO. 26-51669-SMS |
| | ) | |
| Debtor. | ) | |
| ________________________________ | ) | |
| | ) | |
| JOHN H. MURPHY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | ADVERSARY PROCEEDING |
| | ) | NO. ____________________ |
| v. | ) | |
| | ) | |
| MELINDA RAE ROTHENBERGER, | ) | |
| | ) | |
| Defendant. | ) | |
| ________________________________ | ) | |

**COMPLAINT OBJECTING TO DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727 AND TO DETERMINE**
**DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523**

COMES NOW John H. Murphy, Jr., a creditor of the above-named Debtor, by and through undersigned counsel, and files this Complaint Objecting to Discharge Pursuant to 11 U.S.C. § 727 and to Determine Dischargeability of Debt Pursuant to 11 U.S.C. § 523 (the "**Complaint**"), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the standing order of reference of the United States District Court for the Northern District of Georgia.

2. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J), and Plaintiff consents to the entry of final orders and judgments by this Court.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding arises in and relates to the Chapter 7 case of Melinda Rae Rothenberger pending in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, Case No. 26-51669-SMS (the "**Bankruptcy Case**").

4. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 523 and 727, and Rules 4004, 4007, and 7001(4) and (6) of the Federal Rules of Bankruptcy Procedure.

5. This Complaint is timely filed. By Order entered July 15, 2026 [Doc. 45] the Court extended the deadline within which Plaintiff may file a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 and a complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 through and including September 14, 2026.

## PARTIES

6. Plaintiff John H. Murphy, Jr. ("**Plaintiff**" or "**Murphy**") is an individual residing in Cherokee County, Georgia, and is a creditor of the Debtor holding a claim within the meaning of 11 U.S.C. § 101(5) and (10).

7. Defendant Melinda Rae Rothenberger (the "**Debtor**" or "**Defendant**") is the debtor in the Bankruptcy Case. The Debtor may be served with process pursuant to Fed. R. Bankr. P. 7004(b)(9) by first-class mail addressed to her at 1223 Old Lathemtown Road, Canton, Georgia 30115, and to counsel of record for the Debtor in the Bankruptcy Case.

## THE BANKRUPTCY CASE

8. On February 6, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "**Bankruptcy Code**") in this Court, commencing the Bankruptcy Case.

9. S. Gregory Hays was appointed as interim Chapter 7 trustee and is the duly appointed and acting Chapter 7 trustee in the Bankruptcy Case (the "**Trustee**") pursuant to 11 U.S.C. § 702(d).

10. The meeting of creditors convened under 11 U.S.C. § 341(a) was concluded on March 10, 2026.

11. On July 17, 2026, the Trustee commenced two adversary proceedings relevant to the matters described herein. In the first, styled Hays v. Rothenberger against Joseph Brant Rothenberger, Adv. Pro. No. 26-5177-sms [Doc. 47] (the "**Residence Adversary Proceeding**"), the Trustee seeks, among other relief, to avoid and recover under 11 U.S.C. §§ 548 and 550 a pre-petition transfer by the Debtor of her interest in her residence and to sell the estate's and co-owner's interests in that property under 11 U.S.C. § 363(h). In the second, styled Hays v. Rothenberger against the Debtor and Joseph Brant Rothenberger, Adv. Pro. No. 26-5178-sms [Doc. 48] (the "**Turnover Adversary Proceeding,**" and together with the Residence Adversary Proceeding, the "**Trustee's Adversary Proceedings**"), the Trustee seeks turnover of the Debtor's 2024 income tax refunds and of funds withdrawn from a joint bank account, and, in the alternative, avoidance and recovery of that withdrawal as a fraudulent transfer.

## FACTUAL BACKGROUND

### *A. The Sale of Southpoint, the Note, and the Pledge of Stock.*

12. Southpoint Financial Services, Inc. ("**Southpoint**") is a Georgia corporation engaged in the mortgage lending business.

13. Prior to December 2022, Plaintiff was the Chief Executive Officer of Southpoint and the owner of the stock of Southpoint. The Debtor was the President of Southpoint.

14. On or about December 2, 2022, Plaintiff and the Debtor executed a Purchase and Sale Agreement (the "**Agreement**") pursuant to which the Debtor agreed to purchase all right, title, and interest in Southpoint from Plaintiff for $3,500,000.00. The effective date of the Agreement was January 1, 2023.

15. The Debtor paid an initial earnest money payment of $75,000.00 on the effective date of the Agreement.

16. In connection with the Agreement, the Debtor executed a Promissory Note in favor of Plaintiff (the "**Note**") in the principal amount of $3,425,000.00, payable in twelve monthly installments of $50,000.00 beginning January 1, 2023, followed by thirty-five monthly installments of $78,500.00 beginning January 1, 2024, with a final payment of $77,500.00 due on December 1, 2026.

17. The Note provides that any installment not paid within ten days of its due date shall bear interest at the rate of eight percent (8%) per annum from the date of default, and that if the Note is collected by or through an attorney, the holder is entitled to recover attorney's fees in an amount equal to fifteen percent (15%) of the outstanding principal and interest or the actual cost of attorney's fees incurred, whichever is less, together with all reasonable costs of collection.

18. On or about December 28, 2022, Plaintiff and the Debtor executed a Pledge of Shares of Stock in Southpoint Financial Services, Inc. (the "**Pledge**"), by which the Debtor pledged 248 shares of Southpoint common stock to Plaintiff as collateral securing the Note.[1]

[1] The Note recites 248 shares as the number pledged. An August 7, 2025 demand letter sent by counsel for Murphy in the State Court recites 348 shares, which, upon information and belief, was a typographical error.

19. At all relevant times, the Debtor knew that the Southpoint stock was pledged as the collateral securing her obligations to Plaintiff under the Note, and knew that the value of that collateral was a function of the value of Southpoint's assets.

20. At the time the Debtor acquired Southpoint, Southpoint owned improved real property in Dawson County, Georgia, commonly known as 62 Bear Cub Ridge, Big Canoe, Georgia 30143, Tax Parcel No. 015B 054 (the "**Big Canoe Property**"). Southpoint acquired the Big Canoe Property on December 23, 2010 by Quitclaim Deed from Plaintiff and Larry Overby, recorded at Deed Book 972, Page 506, Dawson County, Georgia records.

21. Following the sale, the Debtor served as Chairman and Chief Executive Officer of Southpoint and exercised control over Southpoint and its assets.

***B. The Debtor Strips the Big Canoe Property from Southpoint.***

22. On or about December 19, 2023, the Debtor, acting as Chairman and Chief Executive Officer of Southpoint, executed a Quitclaim Deed conveying the Big Canoe Property from Southpoint to the Debtor in her individual capacity. That deed was recorded on April 29, 2024 at Deed Book 1689, Page 152, Dawson County, Georgia records (the "**Southpoint Transfer**").

23. The Quitclaim Deed effecting the Southpoint Transfer recites consideration of one dollar ($1.00). The PT-61 Real Estate Transfer Tax Form filed in connection with the Southpoint Transfer, No. 042-2024-000756, identifies the transaction as a "Company to Individual Transfer" and reports actual consideration of $0.00.

24. Southpoint received no reasonably equivalent value, and no value at all, in exchange for the Southpoint Transfer.

25. Three days later, on or about December 22, 2023, the Debtor executed a Quitclaim Deed purporting to convey two-thirds of her interest in the Big Canoe Property to Carlos M. Perez and Sharon R. Gillies. That deed was recorded on June 5, 2024 at Deed Book 1696, Pages 262–264, Dawson County, Georgia records. The PT-61 filed in connection with that transfer, No. 042-2024-001059, identifies the transaction as a "Deed of Gift" and reports actual consideration of $0.00.

26. On or about May 31, 2024, the Debtor executed a Corrective Quitclaim Deed restating the December 22, 2023 conveyance to provide that the Debtor, Carlos M. Perez, and Sharon R. Gillies held title as joint tenants with right of survivorship. That deed was recorded on June 5, 2024 at Deed Book 1696, Page 279, Dawson County, Georgia records. The corresponding PT-61, No. 042-2024-001061, likewise reports consideration of $0.00.

27. Also on or about May 31, 2024, the Debtor, Carlos M. Perez, and Sharon R. Gillies executed a Security Deed granting Southpoint a security interest in the Big Canoe Property to secure a loan from Southpoint in the principal amount of $580,000.00, with a stated maturity date of July 1, 2054. That Security Deed was recorded on June 5, 2024 at Deed Book 1696, Pages 280–298, Dawson County, Georgia records.

28. The net effect of the foregoing transactions was that Southpoint was divested of the Big Canoe Property for no consideration, and Southpoint then advanced $580,000.00 of its own funds to the Debtor and her transferees secured by the very property that had just been conveyed away from Southpoint for nothing.

29. The Debtor caused each of the foregoing transactions. The Debtor did so with knowledge that the Southpoint stock was pledged to Plaintiff as collateral, and with the intent and

effect of removing value from Southpoint and from the collateral securing her obligations to Plaintiff.

30. Upon information and belief, the Debtor did not disclose the Southpoint Transfer or any of the subsequent conveyances of the Big Canoe Property to Plaintiff at or before the time they were made, and the deeds effecting the Southpoint Transfer and the conveyance to Perez and Gillies were not recorded until April 29, 2024 and June 5, 2024, respectively.

***C. The Debtor's Default and Plaintiff's Collection Efforts.***

31. The Debtor made payments in accordance with the Note through February 1, 2024. She then paid $50,000.00 on each of March 1, 2024 and April 1, 2024, and $10,000.00 on each of May 1, 2024 and June 1, 2024, in each case less than the amount then due.

32. The Debtor has made no payment on the Note since June 1, 2024. The outstanding principal balance due under the Note is $2,548,000.00.

33. The Southpoint Transfer occurred less than two months before the Debtor made her first installment payment in an amount less than the amount owed under the Note. The deed conveying two-thirds of the Big Canoe Property to Perez and Gillies was recorded days after the Debtor made her final partial payment on the Note.

34. On August 14, 2024, Plaintiff, through counsel, sent the Debtor a Notice of Default Under Financing Agreement Dated December 2, 2022; Demand for Immediate Payment and Notice of Intention to File Legal Action Thereon. The Debtor did not respond to that letter and made no further payments.

35. On August 7, 2025, Plaintiff, through counsel, sent the Debtor a Demand for Payment and Notice of Default Under Financing Agreement With Effective Date of January 1, 2023; Southpoint Financial Services, Inc., which accelerated the balance due under the Note,

stated a total amount due of $2,853,760.00 as of that date, and gave notice of Plaintiff's intent to seek attorney's fees. The Debtor did not respond to that letter and made no payment.

36. On September 5, 2025, Plaintiff filed a Verified Complaint against the Debtor, Carlos M. Perez, Sharon R. Gillies, and Southpoint in the Superior Court of Cherokee County, Georgia, Civil Action File No. 25CVE1806 (the "**State Court Action**"), asserting claims for suit on the Note, voidable transfer under O.C.G.A. §§ 18-2-74 and 18-2-75, and attorney's fees.

***D. The Debtor Conveys Her Residence to Her Spouse on the Eve of Bankruptcy.***

37. On or about August 28, 2020, the Debtor acquired an interest in improved real property in Cherokee County, Georgia, commonly known as 1223 Old Lathemtown Road, Canton, Georgia 30115 (the "**Residence**"), pursuant to a Limited Warranty Deed from Jason Hipps Homes, LLC, recorded on September 14, 2020 at Deed Book 14527, Page 1575, Cherokee County, Georgia records.

38. On or about September 30, 2022, the Debtor conveyed the Residence to herself and Joseph Brant Rothenberger as joint tenants with right of survivorship pursuant to a Quitclaim Deed recorded on October 4, 2022 at Deed Book 14827, Page 2268, Cherokee County, Georgia records.

39. Joseph Brant Rothenberger is the Debtor's spouse. The Debtor so testified at the meeting of creditors held under 11 U.S.C. § 341(a). He is accordingly an insider of the Debtor within the meaning of 11 U.S.C. §§ 101(31)(A)(i) and 101(45). The Quitclaim Deed recorded on October 4, 2022 at Deed Book 14827, Page 2268, Cherokee County, Georgia records, misspells his middle name as "Brand."

40. On or about June 12, 2023, the Debtor executed a Quitclaim Deed purporting to convey all of her interest in the Residence to Joseph Brant Rothenberger (the "**Residence Deed**"). The Debtor so testified at the meeting of creditors.

41. The Residence Deed was not recorded when executed. It was not recorded until December 11, 2025, when it was filed at Deed Book 15074, Page 520, Cherokee County, Georgia records.

42. Under O.C.G.A. §§ 44-2-1 and 44-2-2, an unrecorded deed is not effective against a subsequent bona fide purchaser for value without notice. Until the Residence Deed was recorded on December 11, 2025, a bona fide purchaser could have acquired an interest in the Debtor's interest in the Residence superior to that of Joseph Brant Rothenberger.

43. The transfer of the Debtor's interest in the Residence was therefore not perfected, and did not occur, until December 11, 2025 (the "**Residence Transfer**"). The Trustee has likewise alleged in the Residence Adversary Proceeding that, pursuant to 11 U.S.C. § 548(d)(1), the date of that transfer is December 11, 2025.

44. From June 12, 2023 through December 11, 2025, a period of approximately thirty months, the Debtor's interest in the Residence was concealed from her creditors in that record title continued to reflect the Debtor as a joint tenant while the Debtor and her husband treated the Residence as his alone.

45. The Residence Deed was recorded approximately three months after Plaintiff filed the State Court Action, approximately five weeks after a judgment creditor, Pinnacle Business Funding, garnished and froze the Debtor's bank account on November 3, 2025, ten days after the Debtor wrote to that creditor on December 1, 2025 concerning the balance owed, and fifty-seven (57) days before the Petition Date.

46. The Debtor offered no explanation at the meeting of creditors for the thirty-month delay between the execution of the Residence Deed and its recording, or for the timing of the recording.

47. The PT-61 filed in connection with the Residence Transfer reports that no consideration was paid for the Residence Transfer.

48. The Debtor received no consideration, and no reasonably equivalent value, in exchange for the Residence Transfer.

49. The Debtor continued to occupy and use the Residence after the Residence Transfer and continues to reside there. The Debtor so testified at the meeting of creditors.

50. Notwithstanding the Residence Transfer, the Debtor remains personally obligated on the indebtedness secured by the Residence, including a first mortgage held by Regions Bank in the approximate original amount of $857,000.00, an equity line held by U.S. Bank in the approximate amount of $350,000.00, and a loan obtained in connection with the construction of a swimming pool at the Residence. The Debtor so testified at the meeting of creditors.

51. The Debtor scheduled the value of the Residence at approximately $1,200,000.00, supported by an appraisal she obtained. The Debtor so testified at the meeting of creditors.

52. At the time of the Residence Transfer, the Debtor was insolvent, or became insolvent as a result of the Residence Transfer.

53. At the time of the Residence Transfer, the Debtor was indebted to Plaintiff in an amount in excess of $2,548,000.00 in principal, exclusive of accrued interest, attorney’s fees, and costs, and Plaintiff was actively prosecuting the State Court Action against her.

54. The Residence Transfer was the culmination of a pattern of conveyances of the Debtor's assets, and assets under the Debtor's control, to insiders and related persons for no consideration following the Debtor's default under the Note.

***E. The Debtor's Insider Transfers Funds***

***from a Frozen Joint Account on the Eve of Bankruptcy.***

55. Prior to the Petition Date, the Debtor and Joseph Brant Rothenberger maintained a joint deposit account at JPMorgan Chase Bank, account ending in 1607 (the "**Chase Account**").

56. On November 3, 2025, in connection with the Judgment described above, Pinnacle levied upon and froze the Chase Account.

57. On December 10, 2025, notwithstanding the levy, Joseph Brant Rothenberger withdrew $65,000.00 from the Chase Account (the "**Withdrawn Funds**").

58. Upon information and belief, the majority of the Withdrawn Funds represented the Debtor's own contributions to the Chase Account, and the Debtor's portion of the Withdrawn Funds was property of the Debtor.

59. The transfer of the Debtor's portion of the Withdrawn Funds to Joseph Brant Rothenberger, an insider, occurred on December 10, 2025, within one year, and fifty-eight days, before the Petition Date, and while a creditor's levy on the same account remained pending.

60. On April 9, 2026, Plaintiff filed a motion pursuant to Fed. R. Bankr. P. 2004 for examination of the Debtor and for the production of documents [Doc. 26] (the "**2004 Motion**").

61. On April 13, 2026, the Court entered an Order granting the 2004 Motion [Doc. 27] (the "**2004 Order**"). The 2004 Order directed the Debtor to produce the documents described

therein within twenty-one (21) days of entry of the 2004 Order, or on or before May 4, 2026.

62. The 2004 Order was duly served upon the Debtor and upon counsel of record for the Debtor via the Bankruptcy Noticing Center on April 15, 2026.

63. The Debtor has produced no documents whatsoever in response to the 2004 Order.

64. Following entry of the 2004 Order, counsel for Plaintiff corresponded with counsel for the Debtor by electronic mail on July 7, 2026, requesting the Debtor's compliance with the 2004 Order.

65. The Debtor has not produced any documents, has not objected to the 2004 Order, has not moved to quash, modify, or for relief from the 2004 Order, has not sought an extension of time within which to comply, and has offered no explanation for her failure to comply.

66. The Debtor's failure to comply with the 2004 Order is willful and constitutes a refusal to obey a lawful order of this Court.

67. As a consequence of the Debtor's non-compliance, Plaintiff has been deprived of the books, records, and documents from which the Debtor's financial condition, business transactions, and the disposition of her assets might be ascertained.

***F. The Debtor's Schedules and Sworn Testimony.***

68. The Debtor signed and filed under penalty of perjury her voluntary petition, schedules of assets and liabilities, and statement of financial affairs in the Bankruptcy Case. The Debtor testified under oath at the meeting of creditors convened under 11 U.S.C. § 341(a).

69. On Schedule A/B, the Debtor disclosed her interest in the Big Canoe Property but stated its value as $0.00. At the meeting of creditors, the Debtor admitted that she holds record

title to the Big Canoe Property as a joint tenant with right of survivorship together with Carlos M. Perez and Sharon R. Gillies, testifying that she is "on title" to the property.

70. Schedule A/B identifies the county in which the Big Canoe Property is located as Pickens County. In fact, the Big Canoe Property and each of the instruments described herein above are recorded in Dawson County, Georgia records. A search of the real property records of Pickens County for the Big Canoe Property would not reveal any of those instruments.

71. The Debtor did not schedule on Schedule A/B a recreational vehicle titled in her name, notwithstanding that she scheduled the secured debt owed to U.S. Bank in connection with that vehicle. At the meeting of creditors, the Trustee questioned the Debtor about the vehicle and stated on the record: "I didn't see it on the property schedule." The Debtor testified that the recreational vehicle is titled in her name, that she owes approximately $151,000.00 on it, and that she believes it to be worth approximately $160,000.00. The Debtor did not thereafter amend Schedule A/B to add the vehicle.

72. The Debtor did not schedule three Parent PLUS educational loans owed to the United States Department of Education in the approximate aggregate amount of $36,000.00. At the meeting of creditors the Debtor acknowledged those obligations.

73. At the meeting of creditors, the Debtor testified that she sold the Big Canoe Property to Carlos M. Perez and Sharon R. Gillies for $580,000.00. That testimony is irreconcilable with the recorded instruments: the December 22, 2023 Quitclaim Deed and its accompanying PT-61 identify the conveyance as a "Deed of Gift" for consideration of one dollar ($1.00) and report actual consideration of $0.00; the May 31, 2024 Corrective Quitclaim Deed likewise recites consideration of one dollar ($1.00) and reports actual

consideration of $0.00; and no Georgia real estate transfer tax was paid on either conveyance.

74. At the meeting of creditors, the Debtor further testified that no quitclaim deed of the Big Canoe Property was executed in December 2023, stating that there "shouldn't have been one in December" and that she did not know why one would exist. In fact, the Debtor executed a Quitclaim Deed conveying two-thirds of her interest in the Big Canoe Property to Perez and Gillies, which deed was acknowledged before a notary public on December 22, 2023 and recorded on June 5, 2024.

75. At the meeting of creditors, the Debtor testified that her reported income was approximately $1,600,000.00 in 2022, approximately $855,000.00 in 2023, and approximately $325,000.00 in 2024; that she withdrew approximately $125,000.00 from retirement accounts during 2024 and 2025; and that Southpoint ceased operations on May 31, 2025 and retains no assets.

76. At the meeting of creditors, the Debtor testified that she expended "well over $300,000.00" of personal funds on renovations to the Big Canoe Property and approximately $68,000.00 in mortgage payments on that property. The Debtor has produced no documentation substantiating those expenditures.

77. Prior to the meeting of creditors, the Debtor provided the Chapter 7 Trustee with copies of her 2024 federal and Georgia income tax returns, which reflected refunds due of $52,916.00 from the Internal Revenue Service and $6,012.00 from the Georgia Department of Revenue.

78. In response to Question 28 of Schedule A/B, the Debtor denied that any tax refund was owed to her.

79. At the meeting of creditors, when the Trustee asked the Debtor whether she anticipated receiving a refund from the IRS, the Debtor gave an evasive and non-responsive answer concerning an unfiled Southpoint business tax return.

80. The day after the meeting of creditors, on March 11, 2026, a refund of $52,916.00 from the IRS was deposited into a bank account associated with the Debtor. A refund of $5,141.96 from the Georgia Department of Revenue followed on March 12, 2026.

**COUNT I**

***(Objection to Discharge - 11 U.S.C. § 727(a)(2)(A))***

81. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

82. Pursuant to 11 USC § 727(a)(2)(A), the Court should deny a debtor's discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred or concealed property within one year prior to the date of the filing of the bankruptcy case, or after the case is filed. *11 U.S.C. §727(a)(2)*.

83. The Residence Transfer was a transfer of property of the Debtor within the meaning of 11 U.S.C. §§ 101(54) and 727(a)(2)(A).

84. For purposes of 11 U.S.C. § 727(a)(2)(A), a transfer of an interest in real property occurs when the transfer is perfected so that a bona fide purchaser from the debtor cannot acquire an interest superior to that of the transferee. The Residence Transfer was not perfected until the Residence Deed was recorded on December 11, 2025.

85. The Residence Transfer therefore occurred on December 11, 2025, within one year before the Petition Date.

86. In the alternative, and independently, the Debtor concealed her interest in the Residence within the meaning of 11 U.S.C. § 727(a)(2)(A) by withholding the Residence Deed from record for approximately thirty months while continuing to occupy the Residence, and that concealment continued into the one-year period preceding the Petition Date.

87. The Debtor made, or permitted to be made, the Residence Transfer with actual intent to hinder, delay, or defraud a creditor of the Debtor, including specifically Plaintiff, and an officer of the estate charged with custody of property under Title 11.

88. In the alternative, and independently of the Residence Transfer, the Debtor's portion of the Withdrawn Funds described above was transferred to Joseph Brant Rothenberger, an insider, for no consideration, within one year before the Petition Date, and with actual intent to hinder, delay, or defraud the Debtor's creditors, including Plaintiff.

89. The Debtor's actual intent to hinder, delay, or defraud is established by, among other things, the following badges of fraud:

a. the Residence Transfer was made to an insider, the Debtor's spouse;

b. the Debtor received no consideration for the Residence Transfer;

c. the Debtor retained possession and use of the Residence both during the thirty months the Residence Deed was withheld from record and after it was recorded;

d. the Debtor remained personally liable on the indebtedness secured by the Residence while divesting herself of title to it;

e. the Residence Deed was withheld from record for approximately thirty months and was recorded only after Plaintiff had accelerated the Note and filed the State Court Action, and only after another judgment creditor had garnished the Debtor's bank account;

f. the Residence Deed was recorded fifty-seven days before the Debtor's bankruptcy filing;

g. the Debtor was insolvent at the time of, or was rendered insolvent by, the Residence Transfer;

h. the Residence Transfer removed the Debtor's equity in real property scheduled at approximately $1,200,000.00 from the reach of creditors;

i. the Residence Transfer followed a pattern of prior conveyances of assets for no consideration to insiders and related persons; and

j. the Withdrawn Funds were transferred to the Debtor's spouse, an insider, for no consideration, on December 10, 2025, fifty-eight days before the Petition Date, while a creditor's levy on the same account remained pending.

90. By reason of the foregoing, the Debtor is not entitled to a discharge, and the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A).

**COUNT II**

***(Objection to Discharge - 11 U.S.C. § 727(a)(3))***

91. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

92. Pursuant to 11 U.S.C. § 727(a)(3), the Court should deny a debtor's discharge if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. *11 U.S.C. § 727(a)(3).*

93. The Debtor was at all relevant times the Chairman and Chief Executive Officer of Southpoint and the owner of its stock, was the maker of a promissory note in the original principal amount of $3,425,000.00, and engaged in transactions involving real property in two counties and loan proceeds in the amount of $580,000.00.

94. The Debtor had a duty to keep and preserve recorded information, including books, documents, records, and papers, from which her financial condition and business transactions might be ascertained.

95. The Debtor has concealed, destroyed, failed to keep, or failed to preserve such recorded information. The Debtor's complete failure to produce any documents in response to the 2004 Order, coupled with her failure to offer any explanation for that non-production, supports the inference that the Debtor either did not keep or preserve such recorded information or is concealing it.

96. The Debtor's act or failure to act was not justified under all of the circumstances of this case.

97. By reason of the foregoing, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

**COUNT III**

***(Objection to Discharge - 11 U.S.C. § 727(a)(4)(A))***

98. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

99. Pursuant to 11 U.S.C. § 727(a)(4)(A), the Court should deny a debtor's discharge if he or she knowingly and fraudulently, in or in connection with the case, made a false oath or account. *11 U.S.C. § 727(a)(4)(A).*

100. The Debtor signed and filed under penalty of perjury her voluntary petition, schedules of assets and liabilities, and statement of financial affairs in the Bankruptcy Case, and testified under oath at the meeting of creditors convened under 11 U.S.C. § 341(a). Each constitutes an oath in or in connection with the Bankruptcy Case.

101. The Debtor made the following false oaths in or in connection with the Bankruptcy Case:

a. The Debtor falsely stated the value of her interest in the Big Canoe Property on Schedule A/B as $0.00, when in fact she holds record title to that property as a joint tenant with right of survivorship and, per her own testimony discussed below, represented having sold a two-thirds interest in it for $580,000.00.

b. The Debtor falsely omitted from Schedule A/B a recreational vehicle titled in her name and valued by her at approximately $160,000.00.

c. The Debtor falsely omitted from her schedules of liabilities three Parent PLUS educational loans owed to the United States Department of Education in the approximate aggregate amount of $36,000.00.

d. The Debtor falsely testified under oath at the meeting of creditors that she sold the Big Canoe Property to Carlos M. Perez and Sharon R. Gillies for $580,000.00, when the recorded instruments and the corresponding PT-61 forms establish that the conveyance was a deed of gift for nominal consideration on which no transfer tax was paid.

e. The Debtor falsely testified under oath at the meeting of creditors that no quitclaim deed of the Big Canoe Property was executed in December 2023, when she had executed and acknowledged such a deed on December 22, 2023.

f. The Debtor, in response to Question 9 of her Statement of Financial Affairs, which asks whether she was a party to any lawsuit, court action, or administrative proceeding within the year before filing, disclosed only the collection action brought against her by Pinnacle Business Funding, LLC, and omitted Plaintiff's then-pending Verified Complaint against her in the Superior Court of Cherokee County, Georgia, Civil Action File No. 25CVE1806, filed September 5, 2025.

g. The Debtor falsely answered "No" to Question 18 of her Statement of Financial Affairs, which asks whether she sold, traded, or otherwise transferred any property within two years before filing, notwithstanding the Residence Transfer described above.

h. The Debtor falsely answered Question 28 of Schedule A/B by denying that any tax refund was owed to her, notwithstanding that she had already provided the Trustee with her 2024 tax returns reflecting refunds due, and notwithstanding that those refunds were deposited into a bank account associated with her within two days after the meeting of creditors.

i. The Debtor falsely identified the county in which the Big Canoe Property is located as Pickens County on Schedule A/B, when the Big Canoe Property and the instruments effecting its transfer are recorded in Dawson County, Georgia records.

102. The Debtor knowingly and fraudulently made the false oath(s) described above.

103. The false oath(s) described above related to material matters, in that they bore upon the discovery of assets of the estate, the Debtor's business transactions, and the existence and disposition of property of the Debtor.

104. By reason of the foregoing, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

**COUNT IV**

***(Objection to Discharge - 11 U.S.C. § 727(a)(5))***

105. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

106. Pursuant to 11 U.S.C. §727(a)(5), the Court should deny a debtor's discharge if he or she fails to explain satisfactorily any loss of assets or deficiency of assets to meet liabilities. *11 U.S.C. §727(a)(5).*

107. Within the period preceding the Petition Date, the Debtor acquired and controlled substantial assets, including all of the issued and outstanding stock of Southpoint, the Big Canoe Property, the proceeds of the $580,000.00 loan advanced by Southpoint, and the Debtor's interest in the Residence.

108. The Debtor's schedules reflect a deficiency of assets to meet the Debtor's liabilities, which exceed $2,548,000.00 in principal owed to Plaintiff alone, as reflected on Schedule D.

109. The Debtor has failed to explain satisfactorily the loss of these assets or the deficiency of assets to meet her liabilities, including specifically the disposition of the Big Canoe Property, the disposition of the $580,000.00 in loan proceeds advanced by Southpoint in May 2024, and the loss in value of the Southpoint stock.

110. The Debtor's disclosure of the Big Canoe Property on Schedule A/B misidentifies the county in which the property and its chain of title are recorded, further impairing Plaintiff's, the Trustee's, and the Court's ability to ascertain what became of that asset.

111. An explanation is not satisfactory within the meaning of 11 U.S.C. § 727(a)(5) unless it is supported by documentation sufficient to permit the Court and the Debtor's creditors to ascertain with reasonable certainty what became of the assets in question. A vague, uncorroborated, or undocumented assertion does not suffice.

112. The Debtor has offered no such documentation. On April 13, 2026, this Court ordered the Debtor to produce documents pursuant to Fed. R. Bankr. P. 2004. Notwithstanding that Order and written requests from counsel for Plaintiff, the Debtor has produced nothing, and has offered no explanation for either the disposition of the assets described above or her failure to produce records concerning them.

113. The Debtor's failure to produce any documents in response to the 2004 Order has deprived Plaintiff, the Trustee, and this Court of any means of ascertaining what became of these assets.

114. By reason of the foregoing, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(5).

**COUNT V**

***(Objection to Discharge - 11 U.S.C. § 727(a)(6)(A))***

115. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

116. Pursuant to 11 U.S.C. §727(a)(6), the Court should deny a debtor's discharge if he or she refuses to obey any lawful order of the Court, other than an order to respond to a material question or to testify.

117. The 2004 Order is a lawful order of this Court.

118. The 2004 Order was granting a request for production of documents, and contemplated oral examination once those documents were produced.

119. There was no oral examination, and therefore the Debtor was not required to respond to a material question or to testify within the meaning of 11 U.S.C. §727(a)(6)(B) or (C), and the Debtor has not asserted any privilege against self-incrimination or any other privilege in response to it.

120. The Debtor received notice of the 2004 Order and had the ability to comply with it.

121. The Debtor provided none of the items attached to the 2004 Motion as Exhibit "A".

122. The Debtor refused to obey the 2004 Order.

123. The Debtor's refusal to obey the 2004 Order was willful and intentional rather than the product of inadvertence or inability.

124. By reason of the foregoing, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(6)(A).

**COUNT VI**

***(Determination of Nondischargeability - 11 U.S.C. § 523(a)(2)(A))***

125. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein. This Count is pleaded in the alternative to Counts I through V.

126. The term "actual fraud" as used in 11 U.S.C. § 523(a)(2)(A) encompasses fraudulent conveyance schemes effected without a false representation.

127. A debtor who is the recipient of a fraudulent conveyance, and who thereby becomes liable under applicable state law to a creditor of the transferor or to a creditor whose property

interest is impaired by the conveyance, obtains that resulting debt "by . . . actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A).

128. By the Southpoint Transfer, the Debtor obtained the Big Canoe Property from Southpoint for no consideration, at a time when she controlled Southpoint, when the Southpoint stock stood pledged to Plaintiff as collateral for the Note, and when she was approaching default under the Note.

129. The Debtor effected the Southpoint Transfer, and the subsequent conveyances of the Big Canoe Property to Perez and Gillies, with actual intent to hinder, delay, and defraud Plaintiff and to place the Big Canoe Property beyond Plaintiff's reach.

130. The Debtor's misstatement of the county in which the Big Canoe Property is recorded on her bankruptcy schedules is further evidence of her intent to conceal the Big Canoe Property, and the transfers described above, from her creditors.

131. Under Georgia law, including without limitation O.C.G.A. §§ 18-2-74, 18-2-75, and 18-2-77, and the law governing the duties of an officer and controlling shareholder of a corporation, the Debtor became liable to Plaintiff by reason of her receipt of the Big Canoe Property and the resulting impairment of the collateral securing the Note.

132. The liability so incurred by the Debtor is a debt for property obtained by actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A) and is excepted from discharge, together with all interest, attorney's fees, costs, and other relief ancillary thereto.

133. The Trustee's pending avoidance action does not preempt or defeat Plaintiff's right to a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A).

**COUNT VII**

***(Determination of Nondischargeability - 11 U.S.C. § 523(a)(6))***

134. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein. This Count is pleaded in the alternative to Counts I through V.

135. Under Eleventh Circuit law, an injury is "willful" within the meaning of 11 U.S.C. § 523(a)(6) when the debtor commits an intentional act the purpose of which is to cause injury, or which is substantially certain to cause injury.

136. Under Eleventh Circuit law, an injury is "malicious" when it is wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will, and a showing of specific intent to harm is not required.

137. A debtor's unauthorized disposition or impairment of property pledged as collateral to a secured creditor constitutes a willful and malicious injury to that creditor's property interest under 11 U.S.C. § 523(a)(6).

138. Likewise, a debtor's knowing participation in a scheme to place assets beyond a creditor's reach, without just cause, constitutes willful and malicious injury as a matter of law.

139. Pursuant to the Pledge, Plaintiff held a security interest in the pledged shares of Southpoint common stock. That security interest is property of Plaintiff within the meaning of 11 U.S.C. § 523(a)(6).

140. With actual knowledge of the Pledge and of Plaintiff's security interest, the Debtor deliberately and intentionally caused Southpoint to convey the Big Canoe Property to herself for no consideration, caused two-thirds of that property to be conveyed to Perez and Gillies for no consideration, and caused Southpoint to advance $580,000.00 secured by

that same property, thereby disposing of and impairing the very collateral underlying Plaintiff's security interest.

141. The Debtor undertook these acts with the intent to cause injury to Plaintiff's security interest in the Southpoint stock, or with knowledge that injury to that security interest was substantially certain to result.

142. The Debtor had no just cause or excuse for these acts.

143. The Debtor's conduct directly impaired a specific, existing property interest of Plaintiff, specifically the security interest created by the Pledge, rather than merely hindering the collection of an unsecured deficiency.

144. Plaintiff was injured as a direct and proximate result, in that the value of the collateral securing the Note was diminished or destroyed.

145. The resulting debt is a debt for willful and malicious injury by the Debtor to the property of another entity and is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in favor of Plaintiff and against the Defendant as follows:

(a) That process issue according to law;

(b) Denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

(c) Denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(3);

(d) Denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

(e) Denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(5);

(f) Denying the Debtor a discharge pursuant to 11 U.S.C. § 727(a)(6)(A);

(g) In the alternative, determining that the indebtedness owed by the Debtor to Plaintiff is excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) or 523(a)(6);

(h) In the alternative, awarding Plaintiff judgment against the Defendant in the principal amount of $2,548,000.00, together with interest at the contract rate of eight percent (8%) per annum, attorney's fees as provided in the Note and O.C.G.A. § 13-1-11, and all costs of collection, and determining that such judgment is nondischargeable;

(i) Awarding Plaintiff his costs in this adversary proceeding; and

(j) Granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 14th day of September, 2026.

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

By: */s/ Jonathan Clements*
William A. Rountree
Georgia Bar No. 616503
Jonathan Clements
Georgia Bar No. 130051
2987 Clairmont Road
Suite 350
Atlanta, GA 30329
Tel: (404) 584-1238
wrountree@rlkglaw.com
jclements@rlkglaw.com
*Counsel for John H. Murphy, Jr.*